## ABNER VICKERY *vs.* FRANKLIN DICKSON.

Where a mortgage, made without consideration, for the purpose of sale, is sold for a sum less than its face, the transaction is usurious, and the mortgage is void in the hands of the mortgagee.

A mortgage having no consideration whatever, as between the parties, except the surrender of a prior mortgage which is usurious and void, is tainted with the usury of the first, and cannot be enforced.

The request of a debtor, to a third person, to become a surety for him to his creditor, for a loan, cannot purge a usurious transaction of its usury.

An unacknowledged mortgage is a valid security in the hands of the mortgagee, except as against *bona fide* purchasers or incumbrancers without notice.

APPEAL by the defendant from a judgment entered upon the report of a referee, in a foreclosure suit.

This case has been twice tried before the referee, and has been once before the court at a general term thereof, and a new trial granted. (*See* 35 *Barb.* 96.) Upon the first trial, the referee held that the answer of usury did not set up facts sufficient to constitute a defense, because it did not appear that this defendant was in any way a surety for John W. Dickson. The court, however, upon looking into the answer, were of opinion that the allegation that the bond and mortgage were made at the request of John W. Dickson, made him a surety for him, and consequently, that he could set up the defense. Upon the second trial the defense of usury was the only one tried, and the referee found expressly, as matter of fact, that Franklin Dickson did not execute his two mortgages as surety for John W., but for his sister Mary, who, upon the purchase of John's interest in the farm, agreed to take up and discharge the original mortgage held by the plaintiff. And the referee found and reported that the plaintiff was entitled to the usual judgment for the foreclosure and sale of the mortgaged premises.

*W. Porter*, for the appellant.

*Smith & Markham*, for the respondent.

Vickery *v.* Dickson.

*By the Court,* MULLIN, J.   The first, and perhaps most important question in this case is, whether the original mortgage given by John W. Dickson to Noyes, was given to raise money upon by a sale of it for so much money as could be obtained therefor, or whether it was given for that purpose, and also to secure him for his indorsements? The facts bearing on the question are briefly these: John W. Dickson, before November, 1857, when the mortgage above mentioned was given, died seised of certain premises, of which those in question in this suit are a part, leaving a widow and five children his heirs, and only heirs at law, and who became owners of the said property. The family resided on the farm with the mother, who carried it on.   She got into debt, and Noyes became indorser on her paper.   These notes had been discounted at the bank, and it being troublesome to get the paper renewed, it was proposed by John W. Dickson, or it was proposed to him by Noyes, to make a mortgage at two years, upon his undivided interest in the farm, sell it, and with the avails pay the notes on which Noyes and himself were indorsers.   A mortgage for $1200 was thereupon made by John W. Dickson to said Noyes, bearing date 1st November, 1857, and the same was duly acknowledged and recorded.   Sundry attempts were made to sell the mortgage, as well by Noyes as by John W. and Mrs. Dickson, without success.   It was, however, finally sold to the plaintiff in this suit, for the sum of $1000, which sum was paid partly in cash and partly in paper which the plaintiff held against Mrs. Dickson.   In March 1858, Mary Dickson purchased the interest of her brother John W., in the farm. And Franklin, another brother, at the request of Mary and her mother, substituted a mortgage made by him upon his interest in the farm, for the sum of $1200, payable to the plaintiff, and the latter accepted the said mortgage in lieu of the one made by John W., and he discharged said last mentioned mortgage of record.   It was to foreclose

this mortgage that this action was brought. . The cause was referred, and the referee, among other things, finds the mortgage first above described was given to secure Noyes for his indorsements for Mrs. Dickson, as well as to sell and raise money to pay paper indorsed by him. He also finds, as matter of fact, that when Mary Dickson purchased of John W. Dickson his interest in the farm, she agreed to pay, as part of the consideration therefor, the aforesaid mortgage. The appellant's counsel insists that these findings are unsupported by the evidence. It is necessary, therefore, to ascertain, before proceeding to the examination of the questions of law in this case, whether the facts have been properly found by the referee.

1st. Was the consideration of the first mortgage, given by John W. Dickson to Noyes, in whole or in part, to secure the latter for his indorsements for Mrs. Dickson? John W. Dickson testifies in the most unqualified terms that his mortgage to Noyes was made to be sold in order to raise money to pay up the paper on which Noyes and himself were indorsers, and for no other purpose. Noyes testifies that when the mortgage was executed to him by John W. Dickson, he held, to secure him for his indorsements for Mrs. Dickson, a mortgage executed by Mary, for the sum of $1000, which was not acknowledged. He says, " we had trouble in getting notes discounted to take up notes which I had indorsed with John for his mother. This gave rise to the conversation about the mortgage. John said he would give me a mortgage to run one year, and I told him I thought I could raise the money on it, and take up the notes I had signed. I had, before this, told John that the mortgage given by Mary to me had not been acknowledged, and that I did not deem it good security. He said he would give me one that would be good security, and take up the notes. Before the mortgage was made, I told John I could sell it for the money and get the face of it. It was agreed between us that the

Vickery *v.* Dickson.

notes I was on should be taken up by the proceeds of the sale, *and the balance John was to have.*" He also says: " I can't remember what reply John made when I said I did not regard Mary's mortgage as very good security, on account of its not being acknowledged. At that time he said, according to my recollection, that he would give me a.mortgage that would be good security, *or that we could get the money on, or something like that, as I can recollect.*"

The foregoing is all the evidence in the case on the point under consideration, and it falls far short of establishing the proposition that the consideration of the first mortgage was given in part to secure Noyes for his indorsements for Mrs. Dickson, except so far as he would be secured by the sale of it, and the application of the proceeds in payment of the paper indorsed by him. The mortgage was made because of the difficulty in renewing paper, and for the purpose of paying it. Noyes expressly declares that before the mortgage was made he told John he could sell it for the money, and get the face of it, and *it was agreed between them* that the notes he (Noyes) was on should be taken up by the proceeds of the sale, *and the rest John was to have.* Again, when he says that John told him that he would give a mortgage that would be good security, he adds, *or* that he could get the money on. It was never agreed that Noyes should take the mortgage to hold as security. The acts of the parties under it show conclusively that it was not given to be held as security, but on the contrary, to be sold. After it was delivered to Noyes, he made several ineffectual efforts to sell it, and he returned it to John after each effort, and John and his mother tried to effect a sale of it, without success. If the mortgage had been delivered as an operative security, can it be supposed that it would have been returned to the mortgagor to traffic with?

The mortgage given by Mary to Noyes was a valid security in his hands, although unacknowledged, except as

against *bona fide* purchasers or incumbrancers without notice. Although Noyes declared to John that he did not consider Mary's mortgage as security, he does not seem to have surrendered or canceled it on the receipt of John W. Dickson's mortgage. It seems to me impossible to hold, on this evidence, that the mortgage from John W. Dickson to Noyes was given for any other purpose than to sell, at the first opportunity, and for such price as could be obtained therefor.

2d. Did Mary agree, as part of the consideration for the purchase of the interest of John W. Dickson in the farm, to pay off and take up the mortgage given by him to Noyes? If by the terms "pay off and take up," as used by the referee in his finding, is meant that Mary was to pay the $1200 and interest due on the Noyes mortgage, and the sum of $1500 to John W. Dickson for his share of the farm, the finding cannot be supported. There is no evidence that she ever agreed to pay for John W.'s interest in the farm, one dollar more than $1500. But it is true that she agreed to relieve the share of the farm allotted to him, in the partition, and which he had conveyed to Mary, from the lien of the Noyes mortgage, so that the mortgage which she gave John for the purchase money should be the first lien thereon. John had given the mortgage for the benefit and accommodation of his mother. The money to be raised upon it was to be applied in payment of the debts for which Noyes held Mary's mortgage as security, and it was entirely proper that as John was dissolving his connection with the property of the family, his own property should be relieved from the lien of the family debts. The substitution of Franklin's mortgage accomplished this purpose, and all that was contemplated by the parties was fully attained. This falls far short of an agreement to pay off the mortgage as part of the purchase money of the farm.

If I am right in my conclusion that the Noyes mortgage

was made without consideration, for the purpose of sale, it follows that as the sale was for a sum less than its face, the transaction was usurious, and the mortgage was void in the hands of the plaintiff.

. We come now to the mortgage in question. As between Franklin Dickson, the mortgagor, and the plaintiff, there was no consideration whatever for the mortgage, except the surrender of the prior mortgage, which was usurious and void. That the new mortgage was given by Franklin, and accepted by the plaintiff at the request of Mrs. Dickson and her daughters, cannot change the result. The last named persons were not parties to the giving of the first mortgage, nor to the giving of the one in suit, except so far as they requested it to be done. This cannot purge the transaction of usury, nor give validity to a defunct mortgage. Mrs. Dickson was the principal debtor; her daughter gave a mortgage to secure Noyes, the indorser; she thereby became surety for her mother. Franklin, at the request both of his mother and Mary, gave the mortgage in question; he became surety for his mother. How the request of the debtor to a third person, to become surety for him to his creditor for a loan, can purge a usurious transaction of its usury, I cannot comprehend. It seems to me that the substituted mortgage is tainted with the usury of the first, and that it cannot be enforced. It is insisted, however, by the plaintiff's counsel, that inasmuch as Mary, Martha and Clara gave to Franklin a personal mortgage upon property, sufficient in value to satisfy it, he cannot set up the defense of usury. Before proceeding to examine this proposition, let us ascertain in what relation the parties stood to each other, in reference to the mortgage debt. Mrs. Dickson was the original debtor; the notes indorsed by Noyes and John W. Dickson were made by her. John W. gave his mortgage to raise money to pay the debts; he thereby became her surety; his mortgage was void for usury. By an

arrangement between John and his sister, she is to relieve his share of the farm from this mortgage ; she is not to pay it as part of the purchase money. When the lien is transferred from the fifth owned by John to the fifth owned by Franklin, the agreement of Mary is performed. The new mortgage, made without consideration, is *substituted* for the usurious mortgage by the new surety. The old debt is not paid except *sub modo*. All the parties connected with these subsequent arrangements are sureties for the mother. When Mary and the other sisters gave the chattel mortgage to Franklin, they did not owe the plaintiff anything ; they had no interest in the mortgages given to the plaintiff, and had no power to either ratify the usurious agreement, or to waive the defense. Their mortgage stood as indemnity to Franklin in the event he paid the debt. It was optional with him to pay the debt or to stand on his defense. If he elected to do the latter, and succeeded, the chattel mortgage became of no value. Had the mother put this security into Franklin's hands to indemnify him, other questions might arise. But the daughters could not, by any act of theirs, impair, in any manner, Franklin's right to resist the foreclosure of his mortgage on the ground of usury.

I have already remarked that, on the evidence, it could not be said that Mary agreed to pay the Noyes mortgage, in addition to the $1500, as the price of John W. Dickson's interest in the farm. Had she so done she could not have set up the defense of usury. But she has not been placed in a situation where she was called on to make any such defense, and hence it is unnecessary to inquire what rights she may have in regard to it. But assuming that she did agree to pay the mortagage, (which is all that can possibly be claimed by the plaintiff,) how are the rights of the parties altered ? The debt, in the event supposed, became hers, and she could not defend on the ground of usury. She did not pay the debt, nor did she procure any one to

Vickery *v.* Dickson.

pay it; she procured the plaintiff to substitute his mortgage in place of the usurious one, thus leaving the usurious agreement in full force. Franklin assumed the usurious debt, and no person ever became liable to the plaintiff for the debt, except Franklin, and he has never ratified nor waived the usury. John W. Dickson never ratified the usurious agreement. The agreement of Mary would have been performed by defeating a foreclosure on the ground of usury, as effectually as by payment, if she could have had an opportunity to allege and prove it.

The purchaser of premises subject to a usurious mortgage, may resist a foreclosure by reason of the usury, unless he has agreed to pay the usurious debt as a part of the price of the land. I have already attempted to show that Mary had never made any such agreement, and of course no waiver of the usury can be predicated upon any such ground.

I am, therefore, of the opinion that the judgment should be reversed, and a new trial had, and the order of reference vacated.

Judgment accordingly.

[ONONDAGA GENERAL TERM, April 1, 1862. *Peckham, Morgan, Mullin* and *Bacon,* Justices.]